**CITY OF FORT WORTH et al. v. SOUTH-
WESTERN BELL TELEPHONE CO.***

No. 7797.

Circuit Court of Appeals, Fifth Circuit.

Jan. 2, 1936.

*Rehearing denied 81 F.(2d) 1016.

R. E. Rouer and R. M. Rowland, both of Fort Worth, Tex., for appellants.

Wm. E. Allen, of Fort Worth, Tex., and Nelson Phillips and Wm. H. Duls, both of Dallas, Tex., for appellee.

Before SIBLEY and HUTCHESON, Circuit Judges, and STRUM, District Judge.

SIBLEY, Circuit Judge.

The city of Fort Worth and Independent School District of Fort Worth, each being a public corporation of Texas, having the same power of taxing property within its limits and having the same tax officers and substantially the same territorial limits, in 1927 for the first time assessed for taxation as a separate item of property the "casement" of the Southwestern Bell Telephone Company in the streets and alleys of Fort Worth in virtue of which its poles and wires and underground cables and conduits are maintained therein. To stop enforcement of the allegedly void tax by levy, which it was said would disrupt the telephone service and cause irreparable and unascertainable damage, and to remove the cloud upon title created by the asserted tax lien, the telephone company, there being diversity of citizenship and more than $3,000 involved, filed its bill for injunction in the federal court. A motion to dismiss it was pursuant to a full written opinion overruled, and, after a hearing upon agreed facts, a decree was given for a perpetual injunction. The assignments of error mainly contend that there was an adequate remedy at law, and that the thing assessed was assessable property and not, as the district court held, a mere franchise taxable by the state only under its occupation tax law.

The remedies at law claimed to be adequate are: (1) An appeal from the assessment to the board of equalization, and from the board to the state district court as provided in the city charter; and (2) payment of the tax under protest and an action at law to recover it. As to the first, the District Judge held that the tribunals reviewing the assessment are by the language of the charter restricted to the question of value, and are not to deal, at least finally, with questions of title or power. This construction appears plausible and no decision of the state courts to the contrary is cited. Indeed, the Supreme Court in Texas & Pac. Ry. Co. v. City of El Paso, 85 S.W.(2d) 245, where the city was suing to collect a tax, held that the unappealed action of the board of equalization was not final even on valuation when fundamental rules were violated. That a void assessment need not be appealed from in order to have relief in equity, see Davis v. Burnett, 77 Tex. 3, 13 S.W. 613; Court v. O'Connor, 65 Tex. 334. The valuation is not brought in question at all in the present bill, but only the power to tax. Appeal to the state district court under the charter would not test this question. Certainly it is not such a clear and adequate remedy as to deprive a federal court of equity of its power to relieve, even if such an appeal could be removed to a federal court for trial. That the remedy at law must be one available in a federal court, see Risty v. Chicago, R. I. & Pac. Ry. Co., 270 U. S. 378, 388, 46 S.Ct. 236, 70 L.Ed. 641; Chicago, B. & Q. R. R. Co. v. Osborne, 265 U.S. 14, 44 S.Ct. 431, 68 L.Ed. 878. Touching the remedy by payment and suit in a federal court of law, we agree with the district judge that it is not clear and certain enough to exclude equity. No Texas statute nor provision in the charter of Fort Worth gives or recognizes such a right. The common law on the subject as

fixed by the Texas cases, and by which as a rule of decision the federal court would in a law case be bound, is not well settled. A taxpayer though paying under compulsion and under protest an invalid tax has no such remedy against a collecting officer who has a process valid on its face. Continental Land & Cattle Co. v. Board, Collector, 80 Tex. 489, 16 S.W. 312. But that he may recover of a governmental division what it thus receives is held in Galveston Gas Co. v. County of Galveston, 54 Tex. 287. Yet whether the payment was under compulsion or voluntary seems to be a question of fact, and if not under compulsion, no recovery will be allowed. City of Houston v. Feeser, 76 Tex. 365, 13 S. W. 266. In State v. Hoffman, 109 Tex. 133, 136, 201 S.W. 653, the court seems to hold that a person is not bound to pay and then sue to recover an illegal tax, but that he should properly pay only what is rightly due and enjoin the collection of the illegal exaction, as Hoffman had done. A Court of Appeals held in Davies' Executors v. Galveston, 16 Tex.Civ.App. 13, 41 S.W. 145, that notwithstanding the decision in Galveston Gas Co. v. County of Galveston, supra, and though the taxpayer paid the exaction after a levy on its property and advertisement for its sale, the payment was voluntary and could not be recovered. A strict rule was also applied in City of Laredo v. Loury (Tex.App.) 20 S.W. 89. The practice in Texas apparently is to be liberal with injunctions before payment but opposed to recoveries afterward. "Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law." Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 558; 39 L.Ed. 578; Wallace v. Hines, 253 U.S. 66, 40 S.Ct. 435, 64 L.Ed. 782; Union Pacific R. R. Co. v. Board of Com'rs of Weld County, 247 U.S. 282, 38 S.Ct. 510, 62 L. Ed. 1110; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638; Atlantic Coast Line R. Co. v. Doughton, 262 U.S. 413, 43 S.Ct. 620, 67 L.Ed. 1051.

■ Turning to the main question whether the thing taxed be taxable, the case stands thus: The "Home Rule Amendment" of the Texas Constitution, art. 11, § 5, adopted in 1912, under which Fort Worth set up its charter, gives to cities having more than 5,000 inhabitants power to levy, assess, and collect such taxes as are authorized by law or by their charters provided they are not inconsistent with the Constitution or a general law. Article 1175, Rev. Stats. of 1925, passed to regulate such cities, in paragraph 7 gives them power to levy any general or special ad valorem tax for any purpose not inconsistent with the Constitution, and paragraph 8 specially authorizes them to provide for the method "of assessing taxes, both real and personal, against any person and corporation, including the right to assess the franchise of any public corporation using and occupying the public streets or grounds of the city, separately from the tangible property of such corporation." The Fort Worth charter besides general provision for ad valorem taxation of all real and personal property within the city contains these provisions: "The right to use the public streets, highways, alleys and thoroughfares of the city which necessitates the digging up or displacement thereof for the installation of equipment, appliances or appurtenances either on, above or below the surface of the same to make the intended use thereof practicable, shall be deemed and considered a franchise," etc.; and, "All rights, privileges and franchises heretofore or hereafter granted to be held by any person, firm or corporation in the streets, alleys, highways or public grounds or places in said city shall be subject to taxation by said city separately from and in addition to the other assets of such person, firm or corporation. * * *" There thus appears prima facie authority to tax the thing here assessed under the description of an easement, whether it be truly a property easement or whether it be a mere special right to use the streets and more accurately called a franchise. The Supreme Court in Texas & Pacific Ry. Co. v. City of El Paso, 85 S.W.(2d) 245, at page 249 says: "There exists a clear distinction between a franchise and an easement. The grant of a franchise does not carry with it an interest in land. It is a privilege which may be granted and acquired without involving the ownership of land. On the other hand, an easement is essentially an interest in land. It is a dominant estate imposed upon a servient estate. The privilege of using the streets for railway purposes is a franchise. The actual occupation of the streets for railroad purposes by virtue of ordinances is an easement." It was there held that whether as a franchise or an easement the railway company's occupancy of the streets of El Paso was taxable ad valorem. The Southwestern Telephone Company does not ap-

pear to have entered the city of Fort Worth by virtue of any city ordinance, but it derives its rights from a statute passed in 1874, now Rev. Stats. of 1925, art. 1416: "Corporations created for the purpose of constructing and maintaining magnetic telegraph lines, are authorized to set up their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters." Article 1420 permits leases and sales of the lines of such companies. Article 1422 gives the municipal authorities by ordinance or otherwise the right to control the placing of the poles and wires, and upon a hearing to alter the same. This legislation includes telephone companies. San Antonio & Aransas Pass Ry. Co. v. S. W. Telegraph & Telephone Co., 93 Tex. 313, 55 S.W. 117, 49 L.R.A. 459, 77 Am.St. Rep. 884. When the Southwestern Bell Telephone Company or its predecessor upon the faith of this statute invested its money by placing its fixtures on and in the streets of Fort Worth, it was as though an offer had been made and accepted, and the resulting contract had been carried into execution by the occupancy of the thing offered.[1] That it came about by direct state action rather than through the exercise of power delegated by the state to its municipality does not alter the effect of it. The result has by the highest authority been held to be the vesting of a property right to be protected as such under the constitutional guaranties. In Board of Mayor, etc., of City of Morristown v. East Tennessee Telephone Co. (C.C.A.) 115 F. 304, 307, the court through Judge Lurton said: "The consent to the occupancy of the streets by the poles and wires of the telephone company for the purpose of maintaining a public telephone system was the grant of an easement in the streets and a conveyance of an estate or property interest, which, being in a large sense the exercise of a proprietary or contractual right [power] rather than legislative, was irrevocable after acceptance, unless the power to alter and revoke was reserved." In Owensboro v. Cumberland Tel. & Tel. Co., 230 U.S. 58, 33 S.Ct. 988, 990, 57 L.Ed. 1389, the Supreme Court says: "That the

grant in the present case was not a mere license is evident from the fact that it was upon its face neither personal nor for a temporary purpose. * * * That an ordinance granting the right to place and maintain upon the streets of a city poles and wires of such a company is the granting of a property right has been too many times decided by this court to need more than a reference to some of the late cases. * * * As a property right it was assignable, taxable, and alienable. Generally it is an asset of great value to such utility companies, and a principal basis for credit." So in City of Louisville v. Cumberland Tel. & Tel. Co., 224 U.S. 649, 32 S.Ct. 572, 575, 56 L.Ed. 934, a charter authority from the state having been acted on, its nature as transferable property was in question. It was said: "While franchises to be are not transferable without express authority, there are other franchises to have, to hold, and to use, which are contractual and proprietary in their nature, and which confer rights and privileges which can be sold wherever the company, as here, has power to dispose of its property. * * * Among those thus held was the right to use the streets in the city for the purpose necessary in conducting a telephone business. Such a street franchise has been called by various names,—an incorporeal hereditament, an interest in land, an easement, a right of way,—but, howsoever designated, it is property. * * * Being property, it was taxable, alienable, and transferable," and it was held irrevocable in the hands of the transferee. If the right to maintain the company's poles, wires, and conduits on the streets of Fort Worth is property for purposes of protection, it is property for purposes of taxation no matter by what name it should rightly be called. For Texas, the case is ruled in principle by that of Texas & Pac. Ry. Co. v. City of El Paso, supra. El Paso, like Fort Worth, is chartered under the Home Rule Amendment and statutes. That the railway company there got its right under a city ordinance instead of a state statute affords no valid distinction. The occupancy of a street by a railroad track is more obvious and perhaps more burdensome to the street than that by poles and underground conduits, but it is not more

<hr>

[1] A general grant by deed of a right of way may thus be made effective by selecting a particular route. Martin v. Seaboard Air-Line Ry., 139 Ga. 807, 77 S.E. 1060; Burrow v. Terre Haute & L. R. R. Co., 107 Ind. 432, 8 N.E. 167; Netherlands American Mortg. Bank v. Eastern R. & L. Co., 142 Wash. 204, 252 P. 916; Warner v. R. R. Co., 39 Ohio St. 70; 19 C. J., Easements, § 209.

real and it requires the same sort of right for its legal support.[2]

■ We might well rest the decision upon the authorities cited," but a further analysis may be helpful in answering some of the objections urged. The state statute, article 1416 et seq., is in itself a mere general permission to any telephone company to use the streets of any city. The company may be said by its mere resolution to do business in a city to have a franchise to use its streets incapable of defeat by the municipality. But there is as yet no located interest or property which a municipality might tax. When, however, the franchise to use the streets is acted on by appropriating permanently definite portions of them for the support of poles and overhead wires, and for the reception of underground cables, a located right to use definite lands for these purposes arises which excludes use otherwise to the extent of the physical occupation, and which may not inappropriately be termed an easement, a property right in that land. We are not here concerned with the question whether a new servitude is thereby laid upon the servient estate when the fee is not owned by the public. Assuming the street itself to be only an easement in the public, there is a setting apart and a dedication by public authority of that portion of the streets thus permanently occupied by the fixtures of the telephone company. The dedication is justified by the fact that the business for whose use it is made is in a sense a public business, and it is not a departure from the purposes of the public street easement. Running wires over the streets takes messenger boys off them, and putting the cables underground in turn removes street complications arising from multiplying overhead wires. The situation as respects the acquisition of a definite property interest in definite realty is quite different from the exercise of a mere franchise to send messenger boys over the streets or even to traverse them with ordinary vehicles as a common carrier, for thereby the streets are used just as others use them. No part of them is dedicated and set apart to a special user; there is no appropriation of any part of them. The reservation by the statute of a supervision through the municipality as to the placing and alteration of the fixtures does not negative its operation, when acted on, as a grant or dedication, but only adds a condition. The condition is probably no more than a reservation of control by virtue of the police power which affects the use of all property, to be restricted to a reasonable exercise when the public safety or convenience requires it. The statute itself expressly authorizes the lease or sale by one telephone company to another of its "lines," a term which certainly means not the mere wires and poles, but the right also to have them supported by the land to which they are attached. This recognizes a vendible property right. The fact that the interest in land created by thus occupying it under a grant of right comes as a gift from the public and remains affected with a public interest does not exclude taxation of it as property. Most of the land in the United States was originally given by government to induce its occupation and use, and the property of public utilities has never been supposed to be exempt from taxation by reason of the public character of their business.

■ Much stress is laid on the undenied proposition that a Home Rule City cannot by its charter be authorized to do anything contrary to a general law; and the proviso of the occupation tax law of 1907, 1st Called Sess., Rev.St.Tex. 1925, art. 7078, "Provided, that nothing herein shall be construed as authorizing any county or city to levy an occupation tax on the occupation and business taxed by this chapter," is pointed to as a contrary general law. This telephone company was taxed and has paid to the state in 1927 by virtue of this law a tax on its business of 1½ per cent. of its gross receipts. The quoted proviso was held in City of Lubbock v. Magnolia Petroleum Co. (Tex.Com.App.) 6 S.W.(2d) 80, to inhibit a tax per gallon by a city on persons selling gasoline within it. But Fort Worth is not here taxing the telephone company on its business or occupation in the city, nor seeking a compensation for the use of its streets,[3] but

---

[2] Interesting discussions upholding local taxation as of a located property interest are to be found in Consolidated Gas Co. v. Baltimore, 101 Md. 541, 61 A. 532, 1 L. R.A.(N.S.) 263, 109 Am.St.Rep. 584, and Stockton Gas & Electric Co. v. San Joaquin County, 148 Cal. 313, 318, 83 P. 54,

5 L.R.A.(N.S.) 174, 7 Ann.Cas. 511; Western Union Tel. Co. v. Hopkins, 160 Cal..106, 116 P. 557.

[3] This distinguishes the much relied on case of City of Tulsa v. Southwestern Bell Tel. Co. (C.C.A.) 75 F.(2d) 343.

is taxing ad valorem as property an interest located within the city which the company is asserted to own. The tax would be due whether the company did any business or not, so long as it owned the property. The fact that the particular property was freely granted it to do business with and is necessary to its business has no more relevancy than if the right of way had been given by a private individual. The objection is in principle answered in Texas & Pacific Ry. Co. v. City of El Paso, supra, by the holding that the state franchise tax against railroad companies, the counterpart of the state occupation tax on others, did not prevent city taxation as property of the right fixed by occupancy of the city streets.

The bill and answer make an issue touching the sufficiency of the assessment in form, but the assessment itself is not in the record and we cannot pass on it. The use in it of the word "easement" we do not regard as of prime importance, though we have held it to be appropriate. It is said the assessment was entered on the personal property roll instead of on that for real estate, but it is not shown that the amount of the tax was thereby altered or any substantial right prejudiced. The error does not appear to be material. We are not informed exactly what was assessed, whether the poles and wires and cables along with the easement which supports them, or the easement separate from the value of poles, wires, and cables as such. The valuation is a very substantial one, $454,300. If the public had not made provision for using the streets, rights of way would have to be acquired over private property and would have been valuable as property. Undoubtedly the similar rights given by the public have value and may be sold for a price to another such company. At the same time in valuing them care must be taken to regard them only as property, without special reference to the money that is made in the business of the company. The question of valuation is not before us, and we mention it only to emphasize that we are holding that there is a separate property interest capable of valuation and taxation, but not to be valued on any strained or artificial basis.

We conclude that the judgment retaining the bill was right, but that the decree for an injunction and other relief was wrong. The decree is therefore reversed and the case remanded with direction to enter one denying relief.

*Rehearing denied 81 F.(2d) 1016.