

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-07-461-CV**

JEANINE ALESCH                                                                              APPELLANT

V.

TEXAS CHRISTIAN UNIVERSITY,                                                    APPELLEES
SHARON FAIRCHILD, JEFFREY
TODD, YUMIKO KEITGES, JEAN
KNECHT, AND WILLIAM POHL

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

This appeal arises out of the decision of Appellee Texas Christian University ("TCU") not to renew Appellant Jeanine Alesch's employment contract. In one broad issue, Alesch argues that the trial court erred by granting summary judgment for TCU on her breach of contract claims. Because

---

[1] *See* Tex. R. App. P. 47.4.

we hold that the trial court did not err by granting summary judgment for TCU, we affirm.

Alesch began working at TCU in 2001. The TCU faculty handbook ("the Handbook") provides that "[o]fficial notification [of faculty appointments] is given by letter" ("offer letter") and that "[r]eappointment of faculty is made by contract on a year-to-year basis" until tenure is granted. In June 2001, TCU sent Alesch a letter offering her a non-tenure-track lecturer position for the upcoming school year, which she accepted. In February 2002, TCU sent Alesch a letter offering her a tenure-track position for the following school year and providing that renewal of the appointment at the end of the agreement's term would depend on a variety of factors, including "programmatic trends." The letter advised her that "neither renewal of this appointment nor a positive tenure decision is automatic or guaranteed." Enclosed with the letter was a one-page employment agreement providing for a term of employment ending on May 10, 2003. Paragraph five of the agreement stated that "[Alesch] agrees and recognizes that reappointment is dependent upon availability of financial resources and . . . an adequate performance level." Near the end of each employment term for the next two terms, TCU sent Alesch an offer letter notifying her that TCU had renewed her appointment, accompanied by another one-page contract ("Agreement") containing the same language as the 2002

2

Agreement. The offer letters stated that "[y]our acceptance of this appointment indicates your willingness to be bound by [the Handbook's] rules and regulations as a condition thereof."

By 2005, the French program had been having problems meeting optimal enrollment numbers for several years. In April 2005, TCU's provost sent Alesch a letter stating that TCU would no longer offer a French major and that therefore TCU would no longer support the tenure-track position she held. The letter stated that "[a]s guardian of scarce University resources, I cannot support a degree program that has such meager support from students."

Alesch filed suit in October 2005. She claimed that TCU breached its contract with her by denying her tenure and deciding to terminate her employment. TCU moved for summary judgment on the grounds that as a matter of law, TCU had no contract with Alesch to provide her tenure and TCU did not breach its contract with Alesch and that there was no evidence of a contract requiring TCU to provide Alesch tenure or otherwise continue her employment.

In addition to suing TCU, Alesch sued the remaining appellees, all faculty members in TCU's languages department, for defamation. She does not appeal the trial court's grant of summary judgment on that claim.

3

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[2] When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[3]

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[4] The motion must specifically state the elements for which there is no evidence.[5] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[6]

---

[2] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see* Tex. R. Civ. P. 166a(b), (c).

[3] *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798.

[4] Tex. R. Civ. P. 166a(i).

[5] *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex. 2002).

[6] *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002).

4

When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.[7] If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.[8]

Alesch claimed in her petition that TCU breached its contract by deciding to terminate her employment. On appeal, she argues that the Agreements were not ambiguous as to the nonrenewal of her appointment and provided that the *only* grounds for not renewing were unavailability of financial resources or an inadequate performance level. We agree with Alesch that the language of the Agreements she relies on is not ambiguous.

A statement in an employment contract that an employer may terminate employment for certain reasons does not constitute an agreement that the employment may be terminated for *only* those reasons.[9] The plain language

---

[7] *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006).

[8] *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

[9] *See Matagorda County Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 739 (Tex. 2006) (construing an employee manual in employee's breach of contract action and holding that "[e]ven assuming that the employee manual created a contract between the District and its employees, . . . a statement that an employee may be dismissed for cause is not a specific agreement that an employee may be dismissed *only* for cause") (emphasis added); *see also*

5

of the Agreements required Alesch to agree that she would not be entitled to reappointment in the case of inadequate financial resources on TCU's part or inadequate performance levels on her part.  But nothing in that language or the Agreement as a whole places an obligation on TCU to renew her appointment in the absence of one of those two circumstances.[10]

Furthermore, that TCU could elect to not renew Alesch's appointment for reasons other than inadequate financial resources or inadequate performance is supported by other language in the contract.  Instruments relating to the same transaction may be read together to determine the parties' intent, "even if the parties executed the instruments at different times and the instruments do not expressly refer to each other," and "[i]n appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument."[11] In determining the parties' intent, we consider the entire writing

---

*Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487–88 (Tex. 2002) (considering the language of memorandum listing Jones's projected pay increases in determining whether employment was at-will and holding that statement that pay increases were contingent upon Jones's future performance evaluations "and available county funding" did not indicate the Department's intent to be bound to not terminate her employment except under those two circumstances).

[10] *See Burwell*, 189 S.W.3d at 739.

[11] *Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000).

6

"in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless," and "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."[12] The provost executed the 2005 offer letter on the same day as the 2005 Agreement, the letter states that the Agreement is enclosed, and the letter asks Alesch to sign and return the letter with the Agreement. Alesch signed both the Agreement and the letter on the same date. This offer letter and the 2005 Agreement must be read together to ascertain the parties' intent.[13]

The 2005 Agreement is entitled "Terminal Contract," and although the name of a contract does not have as much weight as the operative clauses of the contract, it can be considered in interpreting the contract.[14] The offer letter states that the appointment for the 2005–2006 academic year would be Alesch's last tenure-track appointment at TCU. Construing the 2005 offer letter and the 2005 Agreement together, it would be an unreasonable

---

[12] *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

[13] *See Fort Worth ISD*, 22 S.W.3d at 840.

[14] *See Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (noting that "in certain cases, courts may consider the title of a contract provision or section to interpret a contract," although the operative contractual clauses of the agreement must be given greater weight).

7

interpretation to hold that where the document stating the terms of the appointment was entitled "Terminal Contract" and the parties simultaneously executed another document stating that the appointment provided by the Agreement would be Alesch's last tenure-track appointment, the parties nevertheless agreed that the appointment *would* be renewed unless financial resources or Alesch's performance did not support it. To reach Alesch's interpretation, we would have to ignore language in the Agreement and the offer letter, rather than harmonize them with the rest of the parties' writing. And Alesch points us to no provision other than paragraph five that supports her interpretation.[15] We hold that the trial court did not err by granting either TCU's no evidence or traditional summary judgment motions on this part of Alesch's breach of contract claim.

Because we agree that this contract provision is not ambiguous, we do not reach Alesch's arguments with respect to whether, if paragraph five is

---

[15] *See County of Dallas v. Wiland*, 216 S.W.3d 344, 353–54 (Tex. 2007) (noting that the employee manual in question contained numerous provisions suggesting that dismissal could only be for cause, contrasting *Burwell*, in which the personnel manual contained no other such provisions other than the one relied on by the employee and holding that although it is a close question, on balance, the manual taken as a whole required that dismissal be for cause).

ambiguous, the contract incorporated the terms of the 2002 offer letter and whether that letter raises a fact issue for the jury.[16]

In her final argument, Alesch contends that her contract required that she be given a tenure decision in the 2005–2006 academic year and that TCU breached the contract by not making a tenure decision in accordance with TCU's tenure policy. She argues that she should have been given an "up or down vote" on tenure in accordance with the Handbook during the 2005–2006 academic year, and if that had been done, then in accordance with the Handbook's requirements on appointment renewals, she would have been allowed another year of employment at TCU.

We first note that although Alesch made this argument in her response to TCU's motion for summary judgment, her petition does not seek a vote on whether or not to grant tenure—her petition alleges that TCU breached the contract by *denying* her tenure, and she specifically asks the trial court to order TCU to grant her tenure, not to vote on whether to grant it. To obtain summary judgment, a defendant must meet the plaintiff's claim as pleaded.[17] Alesch did not amend her pleadings, and she made no argument in her response

---

[16] *See* Tex. R. App. P. 47.1.

[17] *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995).

9

to TCU's summary judgment motion as to why TCU breached the contract to the extent that it decided not to grant her tenure, and nowhere in the Agreements, the offer letters, or the Handbook does TCU promise Alesch that she will be granted tenure. The trial court was therefore correct to grant summary judgment on such a claim.[18] But to the extent that her argument could be construed as applying to her claim that TCU breached the contract by not renewing her appointment for another year, we will consider it.

Alesch argues that the contract is ambiguous because neither the Agreements nor the Handbook, which Alesch asserts is incorporated into the Agreements, provide the date on which she was entitled to be considered for tenure. But, she argues, the 2002 offer letter shows an agreement that the decision would be made during the 2005–2006 academic year, instead of prior to that time, as happened here. Alesch contends that because the decision should have been made during the 2005–2006 year, she should have been employed for one more year because the Handbook states that "[w]ritten notice from the chief academic officer that a probationary appointment is not to be renewed must be given to the faculty member in advance of the expiration of

---

[18] *See* Tex. R. Civ. P. 166a(i); *Doe*, 903 S.W.2d at 355.

10

his or her appointment. . . at least 12 months before the expiration of an appointment after two years of service at the institution."

The Agreements say nothing about tenure and do not address when or if a tenure decision would be made. Even if the contract incorporates the Handbook, the Handbook does not set out a right to a tenure determination at any particular time. The Handbook expressly states that consideration for tenure will only be made after a probationary period and that the probationary period would be determined by the conditions set forth in the Handbook. The Handbook sets the maximum probationary period at seven years (but then provides that in some circumstances the probationary period could exceed seven years) and provides that the tenure decision will be made at least twelve months before the end of the probationary period. It provides no minimum probationary period and states that an associate professor may apply for tenure in any year. Thus, if the Handbook is incorporated into the contract as Alesch argues, then the contract does not leave out a material term, and there is no need to look to parol evidence to determine when Alesch was entitled to a vote on tenure. The Handbook contains the term and provides that the tenure decision could be made at any time but generally no later than seven years after the probationary period begins. Thus, TCU was free to decide before the 2005–2006 year that Alesch would not be granted tenure.

11

Moreover, neither the contract nor the Handbook guarantees an "up or down vote" on tenure; the Handbook provides that an eligible person "may be nominated for tenure," and as a result, that person would go through a nomination process through the chain of authority, with the Chancellor ultimately deciding whether or not to forward the nomination to the Board of Trustees. Alternatively, instead of waiting for someone to nominate her, she could have applied for tenure through her department chair. TCU made the decision not to nominate her for tenure and in making that decision did not breach the terms of the Agreements or the Handbook.

Further, to read the letter the way Alesch suggests would require us to find in the contract a guarantee of continued employment through the 2006–2007 academic year. That is, Alesch argues that in the 2002 offer letter, TCU promised not to make the tenure decision prior to 2005–2006 and that TCU breached the contract by deciding prior to that time that it would not renew her appointment beyond the end of the 2005–2006 academic year. Implicitly, then, she also argues that TCU agreed to continue to employ her through at least the 2006–2007 academic year. Such a term would clearly contradict the plain language of the Agreements, the Handbook, and other provisions in the 2002 offer letter. We reject Alesch's argument that TCU was not free to make a decision on tenure prior to the 2005–2006 academic year

12

and hold that the trial court did not err by granting summary judgment on Alesch's claim.

Having overruled Alesch's issue, we affirm the judgment of the trial court.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: October 9, 2008