COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-461-CV

 

 

JEANINE ALESCH                                                                APPELLANT

 

                                                      V.

 

TEXAS CHRISTIAN
UNIVERSITY,                                                APPELLEES

SHARON
FAIRCHILD, JEFFREY 

TODD,
YUMIKO KEITGES, JEAN

KNECHT,
AND WILLIAM POHL

 

                                                  ------------

 

              FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------








This appeal arises out of the
decision of Appellee Texas Christian University (ATCU@) not to
renew Appellant Jeanine Alesch=s employment contract.  In one
broad issue, Alesch argues that the trial court erred by granting summary
judgment for TCU on her breach of contract claims.  Because we hold that the trial court did not
err by granting summary judgment for TCU, we affirm.








Alesch began working at TCU
in 2001.  The TCU faculty handbook (Athe Handbook@) provides
that A[o]fficial notification [of faculty appointments] is given by letter@ (Aoffer letter@) and that A[r]eappointment
of faculty is made by contract on a year-to-year basis@ until tenure is granted.  In
June 2001, TCU sent Alesch a letter offering her a non-tenure-track lecturer position
for the upcoming school year, which she accepted.  In February 2002, TCU sent Alesch a letter
offering her a tenure-track position for the following school year and
providing that renewal of the appointment at the end of the agreement=s term would depend on a variety of factors, including Aprogrammatic trends.@  The letter advised her that Aneither renewal of this appointment nor a positive tenure decision is
automatic or guaranteed.@  Enclosed with the letter was a one-page
employment agreement providing for a term of employment ending on May 10,
2003.  Paragraph five of the agreement
stated that A[Alesch]
agrees and recognizes that reappointment is dependent upon availability of
financial resources and . . . an adequate performance level.@  Near the end of each
employment term for the next two terms, TCU sent Alesch an offer letter
notifying her that TCU had renewed her appointment, accompanied by another
one-page contract (AAgreement@) containing the same language as the 2002 Agreement.  The offer letters stated that A[y]our acceptance of this appointment indicates your willingness to be
bound by [the Handbook=s] rules and
regulations as a condition thereof.@

By 2005, the French program
had been having problems meeting optimal enrollment numbers for several
years.  In April 2005, TCU=s provost sent Alesch a letter stating that TCU would no longer offer
a French major and that therefore TCU would no longer support the tenure-track
position she held.  The letter stated
that A[a]s guardian of scarce University resources, I cannot support a
degree program that has such meager support from students.@

Alesch filed suit in October
2005.  She claimed that TCU breached its
contract with her by denying her tenure and deciding to terminate her
employment.  TCU moved for summary
judgment on the grounds that as a matter of law, TCU had no contract with
Alesch to provide her tenure and TCU did not breach its contract with Alesch
and that there was no evidence of a contract requiring TCU to provide Alesch
tenure or otherwise continue her employment.

In addition to suing TCU,
Alesch sued the remaining appellees, all faculty members in TCU=s languages department, for defamation.  She does not appeal the trial court=s grant of summary judgment on that claim.








A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.[2]  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.[3]


After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.[4]  The motion must specifically state the
elements for which there is no evidence.[5]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.[6]








When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.[7]  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no evidence summary judgment is not proper.[8]

Alesch claimed in her
petition that TCU breached its contract by deciding to terminate her
employment.  On appeal, she argues that
the Agreements were not ambiguous as to the nonrenewal of her appointment and
provided that the only grounds for not renewing were unavailability of
financial resources or an inadequate performance level.  We agree with Alesch that the language of the
Agreements she relies on is not ambiguous. 









A statement in an employment
contract that an employer may terminate employment for certain reasons does not
constitute an agreement that the employment may be terminated for only
those reasons.[9]   The plain language of the Agreements
required Alesch to agree that she would not be entitled to reappointment in the
case of inadequate financial resources on TCU=s part or inadequate performance levels on her part.  But nothing in that language or the Agreement
as a whole places an obligation on TCU to renew her appointment in the absence
of one of those two circumstances.[10]








Furthermore, that TCU could
elect to not renew Alesch=s
appointment for reasons other than inadequate financial resources or inadequate
performance is supported by other language in the contract.  Instruments relating to the same transaction
may be read together to determine the parties= intent, Aeven if the
parties executed the instruments at different times and the instruments do not
expressly refer to each other,@ and A[i]n
appropriate instances, courts may construe all the documents as if they were
part of a single, unified instrument.@[11]  In determining the parties= intent, we consider the entire writing Ain an effort to harmonize and give effect to all the provisions of the
contract so that none will be rendered meaningless,@ and A[n]o single
provision taken alone will be given controlling effect; rather, all the
provisions must be considered with reference to the whole instrument.@[12]  The provost executed the 2005
offer letter on the same day as the 2005 Agreement, the letter states that the
Agreement is enclosed, and the letter asks Alesch to sign and return the letter
with the Agreement.  Alesch signed both
the Agreement and the letter on the same date. 
This offer letter and the 2005 Agreement must be read together to
ascertain the parties= intent.[13]









The 2005 Agreement is
entitled ATerminal
Contract,@ and
although the name of a contract does not have as much weight as the operative
clauses of the contract, it can be considered in interpreting the contract.[14]  The offer letter states that the appointment
for the 2005B2006
academic year would be Alesch=s last tenure-track appointment at TCU.  Construing the 2005 offer letter and the 2005
Agreement together, it would be an unreasonable interpretation to hold that
where the document stating the terms of the appointment was entitled ATerminal Contract@ and the parties simultaneously executed another document stating that
the appointment provided by the Agreement would be Alesch=s last tenure-track appointment, the parties nevertheless agreed that
the appointment would be renewed unless financial resources or Alesch=s performance did not support it. 
To reach Alesch=s
interpretation, we would have to ignore language in the Agreement and the offer
letter, rather than harmonize them with the rest of the parties= writing.  And Alesch points us
to no provision other than paragraph five that supports her interpretation.[15]  We hold that the trial court did not err by
granting either TCU=s no
evidence or traditional summary judgment motions on this part of Alesch=s breach of contract claim.

Because we agree that this
contract provision is not ambiguous, we do not reach Alesch=s arguments with respect to whether, if paragraph five is ambiguous,
the contract incorporated the terms of the 2002 offer letter and whether that
letter raises a fact issue for the jury.[16]








In her final argument, Alesch
contends that her contract required that she be given a tenure decision in the
2005B2006 academic year and that TCU breached the contract by not making a
tenure decision in accordance with TCU=s tenure policy.  She argues
that she should have been given an Aup or down vote@ on tenure
in accordance with the Handbook during the 2005B2006 academic year, and if that had been done, then in accordance with
the Handbook=s
requirements on appointment renewals, she would have been allowed another year
of employment at TCU.








We first note that although
Alesch made this argument in her response to TCU=s motion for summary judgment, her petition does not seek a vote on
whether or not to grant tenureCher petition alleges that TCU breached the contract by denying
her tenure, and she specifically asks the trial court to order TCU to grant her
tenure, not to vote on whether to grant it. 
To obtain summary judgment, a defendant must meet the plaintiff=s claim as pleaded.[17]  Alesch did not amend her pleadings, and she
made no argument in her response to TCU=s summary judgment motion as to why TCU breached the contract to the
extent that it decided not to grant her tenure, and nowhere in the Agreements,
the offer letters, or the Handbook does TCU promise Alesch that she will be
granted tenure.  The trial court was
therefore correct to grant summary judgment on such a claim.[18]  But to the extent that her argument could be
construed as applying to her claim that TCU breached the contract by not
renewing her appointment for another year, we will consider it.  

Alesch argues that the
contract is ambiguous because neither the Agreements nor the Handbook, which
Alesch asserts is incorporated into the Agreements, provide the date on which
she was entitled to be considered for tenure. 
But, she argues, the 2002 offer letter shows an agreement that the
decision would be made during the 2005B2006 academic year, instead of prior to that time, as happened
here.  Alesch contends that because the
decision should have been made during the 2005B2006 year, she should have been employed for one more year because the
Handbook states that A[w]ritten
notice from the chief academic officer that a probationary appointment is not
to be renewed must be given to the faculty member in advance of the expiration
of his or her appointment. . . at least 12 months before the expiration of an
appointment after two years of service at the institution.@








The Agreements say nothing
about tenure and do not address when or if a tenure decision would be
made.  Even if the contract incorporates
the Handbook, the Handbook does not set out a right to a tenure determination at
any particular time.  The Handbook
expressly states that consideration for tenure will only be made after a
probationary period and that the probationary period would be determined by the
conditions set forth in the Handbook. 
The Handbook sets the maximum probationary period at seven years (but
then provides that in some circumstances the probationary period could exceed
seven years) and provides that the tenure decision will be made at least twelve
months before the end of the probationary period.  It provides no minimum probationary period
and states that an associate professor may apply for tenure in any year.  Thus, if the Handbook is incorporated into
the contract as Alesch argues, then the contract does not leave out a material
term, and there is no need to look to parol evidence to determine when Alesch
was entitled to a vote on tenure.  The
Handbook contains the term and provides that the tenure decision could be made
at any time but generally no later than seven years after the probationary
period begins.  Thus, TCU was free to
decide before the 2005B2006 year
that Alesch would not be granted tenure. 









Moreover, neither the
contract nor the Handbook guarantees an Aup or down vote@ on tenure;
the Handbook provides that an eligible person Amay be nominated for tenure,@ and as a result, that person would go through a nomination process
through the chain of authority, with the Chancellor ultimately deciding whether
or not to forward the nomination to the Board of Trustees.  Alternatively, instead of waiting for someone
to nominate her, she could have applied for tenure through her department
chair.  TCU made the decision not to
nominate her for tenure and in making that decision did not breach the terms of
the Agreements or the Handbook.

Further, to read the letter
the way Alesch suggests would require us to find in the contract a guarantee of
continued employment through the 2006B2007 academic year.  That is,
Alesch argues that in the 2002 offer letter, TCU promised not to make the
tenure decision prior to 2005B2006 and that TCU breached the contract by deciding prior to that time
that it would not renew her appointment beyond the end of the 2005B2006 academic year.  Implicitly,
then, she also argues that TCU agreed to continue to employ her through at
least the 2006B2007
academic year.  Such a term would clearly
contradict the plain language of the Agreements, the Handbook, and other
provisions in the 2002 offer letter.  We
reject Alesch=s argument
that TCU was not free to make a decision on tenure prior to the 2005B2006 academic year and hold that the trial court did not err by
granting summary judgment on Alesch=s claim. 

 

 








Having overruled Alesch=s issue, we affirm the judgment of the trial court.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

 

DELIVERED:
October 9, 2008











[1]See Tex.
R. App. P. 47.4.





[2]IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 798 (Tex. 2004); see Tex. R. Civ. P. 166a(b), (c).





[3]IHS
Cedars Treatment Ctr., 143 S.W.3d at 798.





[4]Tex.
R. Civ. P. 166a(i).





[5]Id.;
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002).





[6]See Tex.
R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d
211, 215 (Tex. 2002).





[7]Sudan
v. Sudan,  199
S.W.3d 291, 292 (Tex. 2006).





[8]Moore
v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied). 





[9]See
Matagorda County Hosp. Dist. v. Burwell, 189 S.W.3d 738, 739 (Tex.
2006) (construing an employee manual in employee=s
breach of contract action and holding that A[e]ven assuming that the
employee manual created a contract between the District and its employees, . .
. a statement that an employee may be dismissed for cause is not a specific
agreement that an employee may be dismissed only for cause@)
(emphasis added); see also Midland Judicial Dist. Cmty. Supervision &
Corr. Dep=t v.
Jones, 92 S.W.3d 486, 487B88 (Tex. 2002) (considering
the language of memorandum listing Jones=s projected pay increases in
determining whether employment was at‑will and holding that statement
that pay increases were contingent upon Jones=s
future performance evaluations Aand available county
funding" did not indicate the Department's intent to be bound to not
terminate her employment except under those two circumstances). 





[10]See Burwell,
189 S.W.3d at 739. 





[11]Fort
Worth ISD v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex.
2000). 





[12]J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).





[13]See
Fort Worth ISD, 22 S.W.3d at 840. 





[14]See
Enter. Leasing Co. of Houston v. Barrios, 156 S.W.3d 547, 549 (Tex.
2004) (noting that Ain
certain cases, courts may consider the title of a contract provision or section
to interpret a contract,@
although the operative contractual clauses of the agreement must be given
greater weight).





[15]See
County of Dallas v. Wiland, 216 S.W.3d 344, 353B54
(Tex. 2007) (noting that the employee manual in question contained numerous
provisions suggesting that dismissal could only be for cause, contrasting Burwell,
in which the personnel manual contained no other such provisions other than the
one relied on by the employee and holding that although it is a close question,
on balance, the manual taken as a whole required that dismissal be for cause).





[16]See Tex.
R. App. P. 47.1.





[17]SmithKline
Beecham Corp. v. Doe, 903 S.W.2d 347, 355 (Tex. 1995).





[18]See Tex.
R. Civ. P. 166a(i); Doe, 903 S.W.2d at 355.