# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00071-CV

**Terry Kottke and Joan Kottke, Appellants**

**v.**

**Stephen Scott and Crystal Scott, Appellees**

### FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT
### NO. 13,336, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Stephen and Crystal Scott sued Terry and Joan Kottke for breach of an oral contract for the sale of real property. After a bench trial, the district court found that the Kottkes had breached an oral contract to sell their real property to the Scotts and awarded the Scotts $4,658.42 in damages. Because we determine that, as a matter of law, there is no evidence that the parties entered into a contract, we will reverse and render judgment that the Scotts take nothing on their claim.

## BACKGROUND

The Kottkes own real property—consisting of land and an affixed mobile home—at 4017 East Highway 21 in Dime Box. The Scotts contacted the Kottkes to find out whether the Kottkes would be willing to sell the property. The Kottkes verbally agreed to sell the property to the Scotts for $35,000 if the Scotts paid $2,000 as a down payment, at which point the parties

would execute a written contract for the sale. The parties did not discuss the amount of the monthly payments to be made after the down payment. Instead, because the Scotts could not immediately pay the down payment, the Kottkes agreed to allow the Scotts to rent the property for $225 per month on a month-to-month basis pursuant to a written lease that the parties executed in August of 2005. A special provision in the lease stated that the Scotts would be "responsible for all repairs" to the property.

Both sides testified that the initial agreement was for the Scotts to rent for two months, and then, in October, the Scotts were to provide the down payment. However, the Scotts were not able to provide a down payment in October, and instead were going to "try to" provide one by the end of 2005, so they notified the Kottkes, who allowed the Scotts to continue renting.

While renting the property, the Scotts installed carpet and laminate flooring, painted several rooms, and made other repairs to the property. Mrs. Scott testified that the Scotts paid for these improvements in cash, and that, together with compensation for the Scotts' labor, the cost of the improvements was $4,658.42. Mrs. Scott stated that she called Mrs. Kottke in January 2006 to let the Kottkes know that the Scotts had the down payment, but Mrs. Kottke advised her at that time that the Kottkes were no longer willing to sell to the Scotts. On January 25, 2006, the Kottkes sent a letter to the Scotts, asking them to leave the property by the end of February. The Scotts left the property in March. They then sued the Kottkes, asserting as their sole ground for recovery the Kottkes' breach of an alleged oral contract to sell the property.

The district court found that the Kottkes had entered into an oral contract to sell the property to the Scotts and that the contract was enforceable and not subject to the statute of frauds, *see* Tex. Bus. & Com. Code Ann. § 26.01 (West 2009), because the Scotts qualified for the equitable exemption from the statute recognized in *Hooks v. Bridgewater*, 229 S.W. 1114 (Tex. 1921). The district court awarded the Scotts $4,658.42, purportedly to compensate them for the amount their improvements had increased the value of the Kottkes' property. The Kottkes challenge this judgment, alleging that (1) the Scotts presented no evidence of an oral contract for sale of real property, (2) the Scotts' prior breach bars their recovery for breach of the alleged contract, (3) the statute of frauds bars the Scotts' claim for breach of contract, (4) the Scotts presented insufficient evidence that they qualified for the *Hooks* exception to the statute of frauds, and (5) the Scotts presented insufficient evidence of their damages because they did not show that the amount they allegedly spent to make repairs to the property represented the increase in value to the property.

## DISCUSSION

In their first issue, the Kottkes assert that there is no evidence of a contract for the sale of their real property to the Scotts. We will sustain a no-evidence point only if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We view the evidence in the light most favorable to the trial court's findings,

3

indulging every reasonable inference that would support those findings. *City of Keller*, 168 S.W.3d at 807, 822.

To establish the existence of an enforceable contract, a party must prove (1) an offer, (2) acceptance of the offer, (3) mutual assent or "meeting of the minds" regarding the subject matter and essential terms of the contract, and (4) consideration, or mutuality of obligations. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007); *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 392 (Tex. App.—Amarillo 2000, no pet.) (citing *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997)). To determine whether the parties have formed a contract through offer, acceptance, and mutual assent to the contract terms, we rely on "the objective standard of what the parties said and how they acted, not on their subjective state of mind." *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied); *see Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("As with any other contract, the parties' intent is governed by what they said, not by what they intended to say but did not."); Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.").

The Kottkes argue that no contract was formed for two reasons. First, the Kottkes assert that the evidence conclusively establishes that their offer to sell the property was conditioned upon the Scotts' accepting the offer by providing a down payment. It is undisputed that the Scotts never provided a down payment. Second, the Kottkes argue that essential terms of the alleged contract were never agreed to, such that the Scotts and Kottkes had, at best, an unenforceable agreement to engage in future negotiation.

4

Mrs. Kottke testified that although she and her husband had agreed to sell the property if the Scotts provided a down payment, "[w]e decided not to do a land contract because they never came up with the $2,000 down payment in October as promised. And again they said they would have it at the end of the year, 2005, and they still didn't have it." Later, she confirmed that the Scotts did not take possession of the property pursuant to an agreement to purchase it; instead the Scotts leased the property because no purchase agreement could be reached—"Not until they had the down payment and a contract was written up." Her husband testified similarly, stating that they had agreed to sell the property to the Scotts "if they had the $2,000 down payment."

Mrs. Scott's testimony confirms the Kottkes' view of the oral agreement. When asked to explain the terms of the oral agreement, Mrs. Scott testified: "To owner finance the home the agreement was to come up with a down payment and after the down payment they would sign the owner financing agreement with us." In 2005, she had sent the Kottkes a letter stating that the Scotts were "still working on the down payment" and that "[h]opefully at the end of the year we will be able to send the money to draw up the contract." At trial, the Kottkes' attorney questioned Mrs. Scott about this letter:

Q:      Towards the bottom of this letter you stated, hopefully at the end of the year we will be able to send the money to draw up the contract. What did you mean by that?

A:      To draw up the owner financing contract, we would have the money by the end of the year, we would try to.

Q:      Why was it important to draw up the contract?

A:      It was important to draw up the contract to owner finance, to purchase the actual mobile home.

Q: So up until the time to draw up the contract, you hadn't purchased it; is that fair to say?

A: Correct.

Mrs. Scott further acknowledged that the Scotts never paid the down payment, that the monthly rental payments would not apply towards the down payment, and that, consistent with the special provision of the month-to-month lease, that "the agreement was that we would do all the repairs at our own expense."

Viewing the evidence in the light most favorable to the district court, the parties' testimony reflects that they reached an agreement that the Kottkes would sell to the Scotts within a certain time frame—at first, by October 2005, and then by the end of 2005—if the Scotts provided to the Kottkes the $2,000 down payment. But the Scotts did not provide a down payment within the agreed upon period of time. Thereafter, when, after the agreed deadline had passed, the Scotts offered to provide the down payment—not by writing a check, but by stating in a telephone conversation that they finally had the down payment—the Kottkes declined to accept it. Even before the parties' agreed deadline had passed, the Kottkes would have had a right to withdraw their offer at any time before the Scotts accepted by providing a down payment. *See Bowles v. Fickas*, 167 S.W.2d 741, 743 (Tex. 1943). In *Bowles*, the Texas Supreme Court held that no contract was formed where the seller offered to sell land on the conditions that the buyer sign a written contract and deposit $1,000 at a particular bank in earnest money. *Id.* at 742. The buyer received this offer, and signed the contract at the end of April, but did not provide the $1,000. *Id.* On May 15, the seller "declared the deal off." *Id.* Then, on May 17, the buyer deposited $1,000 with the bank. *Id.* In holding that the parties never entered into a contract, the supreme court explained that the seller

6

"had the absolute right to withdraw the offer at any time before [buyer] accepted same in the manner prescribed. Since, therefore, no such acceptance had occurred, [seller] still retained the right . . . to withdraw the offer as she did and thus prevent any contract from arising between her and [buyer]." *Id.* at 743; *see* Restatement (Second) of Contracts §§ 30(1), 50(1) (1981) ("An offer may invite or require acceptance to be made by an affirmative answer in words, or by performing or refraining from performing a specified act . . . ."; "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer."). Unlike the parties in *Bowles*, the parties in this case had established a time frame during which the offer was to be accepted, but the Scotts did not attempt to accept the offer during that time. *See Texas Pipe Line Co. v. Miller*, 84 S.W.2d 550, 551 (Tex. Civ. App.—Eastland 1935, no writ) ("The acceptance must come within the terms of the offer. In other words, if the offer contains a specific time limitation within which it must be accepted, the plaintiff must allege and prove that the acceptance comes within such time."); Restatement (Second) of Contracts §§ 36(1)(a),(2) (1981) ("An offeree's power of acceptance may be terminated by . . . lapse of time"; "In addition, an offeree's power of acceptance is terminated by the non-occurrence of any condition of acceptance under the terms of the offer."). Because the Scotts did not accept the offer within its terms, their attempt to accept the Kottkes' offer of sale in 2006 did not create a contract. *See* Restatement (Second) of Contracts § 35(2) (1981) ("A contract cannot be created by acceptance of an offer after the power of acceptance has been terminated in one of the ways listed in § 36 [including lapse of time or non-occurrence of any condition of acceptance].").

The Scotts insist that they are nonetheless entitled to sue for breach of contract because they paid consideration in the form of rental payments, took possession of the property, and made valuable improvements, thus bringing them within the *Hooks v. Bridgewater* equitable exception to the statute of frauds. *See* 229 S.W. at 1116. Even assuming that rental payments and possession as tenants and repairs that, per the terms of the lease, were to be paid for by the tenants, satisfy the *Hooks* elements, the Scotts cannot rely on the *Hooks* exception unless they first prove the existence of an oral contract:

> Appellee is required to do more than give evidence of the three elements required by Hooks v. Bridgewater to relieve a parol sale of land from the effect of the Statute of Frauds. The conveyance itself must be proven, and its existence may not be inferred solely from the existence of the three elements, especially since appellant denies that any oral conveyance occurred and asserts that only a tenancy existed.

*Hines v. Taylor*, 476 S.W.2d 81, 83 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ) (citing *Arredondo v. Mora*, 340 S.W.2d 322, 324 (Tex. Civ. App.—El Paso 1960, writ ref'd n.r.e.)).

The Scotts' brief refers to the testimony of Mrs. Scott and Mrs. Kottke as supplying evidence that a contract existed. As explained above, the record showed that the parties contemplated entering into a contract by the end of 2005. The record does not support an interpretation that the Kottkes made an open-ended promise to sell the property to the Scotts at an unspecified point in the future. *See Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982) (noting that promissory estoppel applies to sale of land only when promise is to sign document that itself complies with statute of frauds).

8

Even assuming that the Scotts had proven that the Kottkes had agreed to convey the property to them, the agreement was too indefinite to be legally binding. Generally, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *see* Restatement (Second) of Contracts § 33(2) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."). "The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) (internal quotes omitted). An agreement to make a future contract is enforceable only if it is "specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations." *Foster v. Wagner*, 343 S.W.2d 914, 920-21 (Tex. Civ. App.—El Paso 1961, writ ref'd n.r.e.). "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846.

The evidence shows that several essential terms of the Scotts' agreement with the Kottkes were left to future negotiation. The Scotts contended that the property could not be financed through a bank,[1] and they therefore depended upon the Kottkes' future agreement to finance the

---

[1] Mrs. Scott stated in her affidavit that Lee County Bank declined to finance the purchase "because of environmental issues," but she later clarified in her testimony at trial that the Scotts did not apply for financing through the bank because they spoke to a man at State Bank in Dime Box who was familiar with the property and mentioned environmental problems, which Mrs. Scott contended would prevent the Scotts from obtaining financing from a bank.

9

property in order to be able to complete the purchase. Mrs. Scott stated in her affidavit that the terms of the agreement included providing the $2,000 down payment "at 10 percent interest." She testified that the purchase price was $35,000, but she acknowledged that the parties never discussed the amount of the monthly payments. The record contains no evidence as to whether or how often the interest was to be compounded, how payments were to be made, or any other terms of a purchase or financing agreement. Although courts have implied terms when the surrounding circumstances left little doubt as to the parties' intentions, *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 134 (Tex. App.—Waco 2005, pet. denied), we cannot imply terms where the parties did not reach an agreement, but merely planned to reach an agreement that never came to fruition, *see Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 244 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (holding defendant could not be liable for breach of unenforceable "agreement to agree" to finance construction project where loan agreement incorporated "prevailing market rates" and "industry standards" that could not be determined from record and agreement did not specify how interest and principal were to be repaid).

The Scotts' payment of rent and repairs to the Kottkes' property, made consistent with their written lease, did not transform the oral "agreement to agree" into a binding contract. *See* Restatement (Second) of Contracts § 50 cmt. a (1981) ("The acceptance must manifest assent to the same bargain proposed by the offer, and must also comply with the terms of the offer as to the identity of the offeree and the mode of manifesting acceptance."). In *Bryant v. Clark*, the court held that a written contract for the sale of land was too indefinite to authorize a judgment of specific performance, even though the plaintiff argued that he was entitled to specific performance because he had already spent money having the property surveyed and the abstract brought to date, in

10

addition to paying $400.00 in earnest money. 358 S.W.2d 614, 616-17 (Tex. 1962). The written contract in *Bryant* provided: "Price to be $ 10,000.00 (Ten thousand dollars). Mr. Bryant agrees to pay $ 2,000.00 cash and balance at 6% interest, payments to be agreed upon by seller and buyer. We have agreed as follows: 15 annual installments as balance." *Id.* at 615. However, because the parties did not specify the amount of the monthly installments or when the interest was payable and in what amounts, the Court held that the contract was too indefinite. *Id.* at 616-17. The Scotts' agreement with the Kottkes is similarly indefinite and unenforceable. *See* Restatement (Second) of Contracts § 60, illus. 2 (1981).[2]

The fact that the Scotts are suing for damages rather than specific performance does not change the fate of their claim for breach of contract. Insufficiency of a contract not only precludes recovery for specific performance but also for damages for the breach of that contract. *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945); *see Alworth v. Ellison*, 27 S.W.2d 639, 640 (Tex. Civ. App.—Eastland 1930, writ ref'd) (stating that an "action for damages for the breach of a contract is, in effect, an action for its enforcement, and the statute [of frauds], in denying an action for its enforcement, likewise denies an action for damages for its breach."); *Botello v. Misener-Collins Co.*, 469 S.W.2d 793, 795 (Tex. 1971) ("Without an agreement of the parties on this

---

[2] Illustration 2 provides:

A agrees to sell and B to buy a specific tract of land for $ 10,000, $ 4,000 in cash and $ 6,000 on mortgage. A agrees to obtain the mortgage loan for B or, if unable to do so, to lend B the amount, but the terms of loan are not stated, although both parties manifest an intent to conclude a binding agreement. The contract is too indefinite to support a decree of specific performance against B, but B may obtain such a decree if he offers to pay the full price in cash.

essential feature of the trade [how deferred payment of $195,000 was to be paid], there is no contract for the court to enforce—either by specific performance or by awarding damages for breach.").

We sustain the Kottkes' first issue. Because of our disposition of this issue, we need not address issues two through five. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Because there is no evidence that the Scotts entered into a contract with the Kottkes, they cannot recover damages for breach of contract as a matter of law. We therefore reverse the judgment of the district court and render a judgment that the Scotts take nothing on their claim.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Rendered

Filed: April 14, 2011

12