

## KEN PAXTON

### ATTORNEY GENERAL OF TEXAS

March 7, 2023

Ms. Nichole Mock
Wheeler County Auditor
Post Office Box 69
Wheeler, Texas 79096

> **Opinion No. KP-0435**
>
> Re: Authority of a county to use tax revenue to pay a supplement to a hospital district in the county (RQ-0474-KP)

Dear Ms. Mock:

You ask several questions about agreements for emergency medical services—also referred to as "ambulance services"—between Wheeler County ("County") and two hospital districts.[1] You explain that both the North Wheeler County Hospital District and South Wheeler County Hospital District (collectively, "Hospital Districts") are located within the County and "[e]ach hospital district operates its own emergency medical service providing EMS/ambulance services to residents in either the NWCHD or SWCHD."[2] Request Letter at 1. You further explain that "[t]he County has previously entered into Interlocal Agreements" under which the County pays "a $300,000.00 lump sum payment" to assist each hospital district in "the operation of their respective EMS departments" (collectively, "Agreements"). *Id.* at 1–2 (referring to agreements authorized by the Interlocal Cooperation Act, Government Code, chapter 791). You tell us that the funds used to make the contractual payments come "primarily from Wheeler County tax revenue received from property owners throughout the [C]ounty." *Id.* at 2.

As an initial matter, we note that your questions ask us to opine about the nature of the Agreements. *See id.* at 1–3. This office does not construe contracts in the opinion process and thus, will not be opining about the nature of a particular contract. *See* Tex. Att'y Gen. Op. Nos. KP-0391 (2021) at 2 (explaining "this office does not approve or construe specific contracts in the

---

[1]*See* Letter and Attachments from Ms. Nichole Mock, Wheeler Cnty. Auditor, to Off. of the Att'y Gen., Op. Comm. at 1–3 (Aug. 18, 2022), https://texasattorneygeneral.gov/sites/default/files/request-files/request/2022 /RQ0474KP.pdf ("Request Letter" and "Attachments"); *see also* Tex. Att'y Gen. Op. No. JC-0420 (2001) at 1 (explaining that "emergency medical services" were formerly known more commonly as "ambulance services").

[2]The Hospital Districts were both "created under the authority of Section 9, Article IX, Texas Constitution[.]" TEX. SPEC. DIST. CODE §§ 1083.002, 1097.002.

opinion process"), KP-0366 (2021) at 1 . Nevertheless, we can advise you generally as to legal principles pertinent to your questions.

**Expenditure of County Revenue**

Two of your questions concern the expenditure of county revenue. *See* Request Letter at 1–3. You first ask whether the County may use tax revenue to make the payments to the Hospital Districts "regardless of the hospital district residency of the taxpayers who fund" the payments. *Id.* at 1. You question whether it is permissible to send "taxpayer funds to another taxing entity for which the taxpayer has no representation/vote" as to the use of the funds.[3] *Id.* at 2.

When it comes to the expenditure of *county* tax revenue, the hospital district in which the taxpayer resides is of no legal concern. *See generally* TEX. TAX CODE §§ 26.01–.18 (setting forth the procedure the county commissioners court uses to set the ad valorem tax rate); TEX. LOC. GOV'T CODE §§ 111.001–.096 (providing the procedures the commissioners court uses to adopt a budget).

You also ask about the requirement to expend County funds in compliance with article III, subsection 52(a) of the Texas Constitution. *See* Request Letter at 2–3. Article III, subsection 52(a) provides that "the Legislature shall have no power to authorize any county, city, town, or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever[.]" TEX. CONST. art. III, § 52(a). Subsection 52(a) is construed to prohibit a political subdivision, like a county, from gratuitously granting its funds to other political subdivisions, like hospital districts. *See, e.g.*, *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 842–43 (Tex. 2000) (involving payment of city funds to a school district); Tex. Att'y Gen. Op. Nos. KP-0237 (2019) at 1 (involving payment of county funds to a school district), GA-0721 (2009) at 2 (involving payment of hospital district funds to a city).

A political subdivision's payment of funds to another political subdivision is not gratuitous if it meets a three-part test promulgated by the Texas Supreme Court. *See Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 384 (Tex. 2002). The test requires that: (1) the predominant purpose of the expenditure be to accomplish a public purpose, not benefit a private party; (2) the public entity retain sufficient control over the expenditure to ensure the public purpose is accomplished; and (3) the public entity receive a return benefit. *See id.*

As to the first prong, the use of county funds to fulfill a statutory function of the county generally serves a public purpose of the county. *See* Tex. Att'y Gen. Op. No. KP-0237 (2019) at 2. A county may meet the second prong and retain public control over the funds by entering into an agreement that imposes upon a recipient of public funds the obligation to accomplish the public

---

[3]You describe, "[a]s an example, a taxpayer living in and paying property taxes to NWCHD also pays County taxes, with a portion of the taxpayer's County taxes being paid to both" Hospital Districts via the Agreements, "even though the taxpayer does not reside in SWCDHD. The taxpayer does not have the right to vote in the elections for the governing board of directors for SWCHD and has no representative voice on that board as to how the [County payments] are used by SWCHD." Request Letter at 2.

purpose. *See id.* Such an agreement may also serve to ensure the county receives a return benefit in satisfaction of the third prong. *See id.* An agreement could, as you suggest, provide for an "annual accounting" of the funds to satisfy the second and third prongs of the test. *See* Request Letter at 3. But there might also be some other way an agreement could satisfy those prongs.

Applying the three-part test here, we observe that state law authorizes a county to provide ambulance service. *See, e.g.*, TEX. HEALTH & SAFETY CODE § 774.003 (authorizing the commissioners court of a county to provide for emergency ambulance service in the county and expressly authorizing a county to contract with a hospital district for such service); *see also* Tex. Att'y Gen. Op. Nos. GA-0472 (2006) at 2 (concluding a hospital district may, but is not generally required to, provide ambulance service), JC-0420 (2001) at 4 (concluding a municipality may expend tax funds to provide ambulance service within an article IX, section 9 hospital district). And, as you tell us, the County has entered into Agreements with each of the Hospital Districts regarding the responsibilities of the Hospital Districts in exchange for the payment of funds. *See* Request Letter at 1–2; Attachments at 1–2.

But you assert that neither of the Agreements contain sufficient controls to ensure that the public purpose is achieved and that the County receives services equivalent to its expenditures. *See* Request Letter at 2–3. It is for the county commissioners court to determine in the first instance whether a proposed expenditure satisfies the three-part test, subject to judicial review. *See* Tex. Att'y Gen. Op. No. KP-0338 (2020) at 3. Accordingly, we note that the county commissioners court has the ability to terminate the Agreements under the terms provided in the Agreements if it determines that a public purpose is no longer being achieved or that the County is not receiving service equivalent to its expenditures.

**County Debt**

Your remaining question asks whether the Agreements create "a debt obligation that would require the County to calculate a debt rate on Line 42 of the Tax Rate Calculation Worksheet[.]"[4] Request Letter at 2. Line 42 of the Worksheet refers to "debt" as defined in Tax Code section 26.012. *See* Worksheet at 6.

Chapter 26 of the Tax Code sets forth the method by which a taxing unit must calculate and the procedures that a taxing unit must follow in adopting property tax rates (i.e., ad valorem tax rates). *See generally* TEX. TAX CODE §§ 26.01–.18. Section 26.012 defines "debt" to mean:

> (A) a bond, warrant, certificate of obligation, or other evidence of indebtedness owed by a taxing unit that:
>
> (i) is *payable* from property taxes *in installments over a period of more than one year*, not budgeted for payment from

---

[4]*See 2022 Tax Rate Calculation Worksheet Taxing Units Other than School Districts or Water Districts*, TEX. COMPTROLLER OF PUB. ACCOUNTS, *available at* https://comptroller.texas.gov/forms/50-856.pdf ("Worksheet").

maintenance and operations funds, and secured by a pledge of property taxes; and

(ii) meets one of the following requirements:

(a) has been approved at an election;

(b) includes self-supporting debt;

(c) evidences a loan under a state or federal financial assistance program;

(d) is issued for designated infrastructure;

(e) is a refunding bond;

(f) is issued in response to an emergency under Section 1431.015, Government Code;

(g) is issued for renovating, improving, or equipping existing buildings or facilities;

(h) is issued for vehicles or equipment; or

(i) is issued for a project under Chapter 311, Tax Code, or Chapter 222, Transportation Code, that is located in a reinvestment zone created under one of those chapters; or

(B) a payment made under contract to secure indebtedness of a similar nature issued by another political subdivision on behalf of the taxing unit.

*Id.* § 26.012(7) (emphasis added).[5] Because it appears to be the focus of your question, we examine only one portion of the definition of "debt"—indebtedness owed by a taxing unit that is payable "in installments over a period of more than one year[.]" *See* Request Letter at 2; TEX. TAX CODE § 26.012(7)(A)(i).

---

[5]The Comptroller's Worksheet distills this definition into a four-part test, indicating that "[d]ebt means the interest and principal that will be paid on debts that: (1) are paid by property taxes, (2) are secured by property taxes, (3) are scheduled for payment over a period longer than one year, and (4) are not classified in the taxing unit's budget as M&O expenses." Worksheet at 6. The Worksheet instructs that "[d]ebt also includes contractual payments to other taxing units that have incurred debts on behalf of th[e] taxing unit, if those debts meet the four conditions above." *Id.*

The Legislature has, in some instances, mandated that indebtedness be treated as "debt" for purposes of Tax Code subsection 26.012(7). *See, e.g.*, TEX. EDUC. CODE § 45.108(a) (instructing school districts borrowing money for current maintenance expenses that "[n]otes issued for a term longer than one year must be treated as 'debt' as defined in Section 26.012(7), Tax Code").

While not defined in chapter 26, the common meaning of the term "installment" indicates a payment for less than the total amount owed. *See* BLACK'S LAW DICTIONARY 916 (10th ed. 2014) (defining "installment" to mean "a periodic partial payment of a debt" and contrasting it with a lump sum payment); *cf. also* TEX. TAX CODE §§ 31.032, 33.02 (allowing installment payment of property taxes in certain instances). This stands in contrast to a "lump sum" which commonly means "[a] single payment made once, usu[ally] at a particular time, as opposed to a series of smaller payments." BLACK'S LAW DICTIONARY 1664 (10th ed. 2014). Relying on this common meaning, a court would likely conclude that an indebtedness payable in installments is one payable in periodic partial payments. *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 557 (Tex. 2022) (providing that when a statute is clear and unambiguous, a court will apply its words according to their common meaning). And, thus, an indebtedness payable in one lump sum over a period of one year or less does not constitute a debt as defined in subsection 26.012(7).

## S U M M A R Y

The hospital district in which a county taxpayer resides and votes is of no legal consequence when it comes to the expenditure of county property tax revenue.

A county entering into an agreement with a hospital district to provide ambulance services in the county will not violate article III, subsection 52(a) of the Texas Constitution as long as the county: (1) ensures that the transfer of funds is to accomplish a public purpose of the county, not to benefit private parties; (2) retains public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensures that the county receives a return benefit. Whether an agreement satisfies the three-part test is for the county commissioners court to determine in the first instance, subject to judicial review.

A "debt" as defined by Tax Code subsection 26.012(7) requires, among other things, that the indebtedness be "payable from property taxes in installments over a period of more than one year[.]" A court would likely conclude that an indebtedness payable in installments is one payable in periodic partial payments and, thus, an indebtedness payable in a lump sum over a period of one year or less does not constitute a debt as defined in subsection 26.012(7).

Very truly yours,

*Ken Paxton*

K E N   P A X T O N
Attorney General of Texas

BRENT E. WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee

CHRISTY DRAKE-ADAMS
Assistant Attorney General, Opinion Committee